IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JON GARY SCHNABEL,<br><br>                  Petitioner,<br><br>   vs.<br><br>MICHAEL S. EVANS, Warden,<br><br>                  Respondent. | Case No. 2:08-cv-1514 (JKS)<br><br>MEMORANDUM DISPOSITION |

      Petitioner, Jon Gary Schnabel, a state prisoner proceeding through counsel, has filed a Petition for Writ of Habeas Corpus under 28 U.S.C. § 2254.  Schnabel is currently in custody of the California Department of Corrections, incarcerated at the Salinas Valley State Prison in Soledad, California.  Respondent has filed an Answer, and Schnabel has filed a Traverse.

STATEMENT OF THE FACTS

      A.  Molestation Of C.J. (counts one-five)

      C.J. met [Schnabel] when she was 12 years old, and he was her parents' realtor. She started working for him doing "chores" to earn money. On 8 to 10 different occasions during the summer of 1995, [Schnabel] had C.J. rub his penis until ejaculation and then had C.J. apply wart medication. During one of these episodes, [Schnabel] made C.J. press her lips against his penis. During another episode, [Schnabel] made her "tickle [his] balls."

      B.  Molestation Of T.B. (counts six-ten)

      T.B. was a 20 year-old college student at the time of trial. Before she moved away to college, T.B. and her family lived a few houses away from [Schnabel] in Citrus Heights. [Schnabel] was "good friends" with her family, and he was like an uncle to her. [Schnabel] molested her for the first time when she was approximately seven years old. [Schnabel] unzipped his pants, pulled out his penis, and "suggested that [T.B.] touch it." She complied.
      During other incidents at [Schnabel's] house, he would ask her to put wart medication on his penis, and again she complied. These incidents occurred from the time T.B. was 7 years old to the time she was 12.
      There were incidents when T.B. was 9 or 10 years old when [Schnabel] made her put her mouth on his penis, and he put his hand up her skirt or shorts and stroked her vagina.

At some point, [Schnabel] moved to Granite Bay. T.B. recalled one incident there when she was 11 years old and [Schnabel] touched her thigh, unzipped his pants, and directed her to apply medication to his penis.

### C. Molestation Of S.J. (counts eleven-fifteen)

S.J. was 16 years old at the time of trial. She met [Schnabel] when she was seven or eight years old, and he was her parents' realtor. She frequently visited [Schnabel's] house with her family. On 5 to 10 occasions, [Schnabel] had her move her hand up and down his penis so it would become "big" so he could apply wart medication.

[Schnabel] made S.J. "watch a video on how to give oral sex" and look at Playboy magazines. He later made her put her mouth on his penis.

### D. Prior Acts Of Molestation

N.J. was 49 years old at the time of trial. She met [Schnabel] when she was seven years old, and he was living in her neighborhood with a family friend of N.J.'s.  Once, while N.J. was at her friend's house, [Schnabel] exposed his penis, testicles, and legs, told her that he had hurt his leg, and said that he wanted her to "rub it for him." When N.J. started rubbing his leg, [Schnabel] took N.J.'s hand, put it on his penis, and with his hand on top of hers, starting massaging his penis. He also had her rub his inner thigh and put her lips on his penis. As a result of these acts, [Schnabel] pled guilty in 1963 to committing a lewd act on N.J.[1]

### PROCEDURAL HISTORY

Schnabel was convicted by a jury of fifteen counts of lewd and lascivious acts upon a child under fourteen (Cal. Penal Code § 288(a)) involving three different girls. The jury also found true a prior conviction for child molestation (Cal. Penal Code §§ 288, 667.71), and that the offenses charged were committed against two or more victims (Cal. Penal Code §§ 667.61(b), (e)(5)).  Schnabel was sentenced to an aggregate term of 375 years to life in state prison.

Schnabel timely appealed his conviction and sentence to the California Court of Appeal, Third Appellate District, which affirmed both his conviction and sentence in a reasoned, published decision.[2]

---

[1] These facts are taken from the published opinion of the Third District Court of Appeal. *People v. Schnabel*, 150 Cal.App.4th 83 (2007).  These facts are presumed correct unless Schnabel demonstrates that the determination of these facts was unreasonable, 28 U.S.C. § 2254(d)(2).

[2] *People v. Schnabel*, 150 Cal.App.4th 83 (2007).

Schnabel timely petitioned the California Supreme Court for review. Initially, on July 25, 2007, the California Supreme Court granted the petition, however, it subsequently dismissed the matter in light of *People v. Black*, 41 Cal.4th 799 (2007).

On August 16, 2006, Schnabel filed a petition for writ of habeas corpus with the California Court of Appeal, Third Appellate District. The petition was denied with citation to *In re Harris*, 5 Cal.4th 813, 826-27 (1993), *France v. Superior Court*, 201 Cal. 122 (1927); *In re Baker*, 206 Cal.App.3d 493, 499 (1988); and *In re Hillery*, 202 Cal.App.2d 293 (1962).

On May 21, 2007, Schnabel filed a petition for writ of habeas corpus with the California Supreme Court. The California Supreme Court denied the petition on July 25, 2007.

On July 1, 2008, Schnabel filed a petition for writ of habeas corpus with this Court raising seven grounds for relief:

1. The jury instruction contained a structural defect;
2. Insufficient evidence that Schnabel caused harm to Sabrina;
3. Court improperly admitted evidence of Schnabel's prior conviction;
4. The sentencing scheme under which Schnabel was sentenced was unconstitutional;
5. The court improperly refused to strike Schnabel's prior conviction for purposes of sentencing;
6. The court abused its discretion in sentencing; and,
7. Trial counsel was ineffective.

Respondent does not raise a procedural bar to any of Schnabel's claims and concedes that his seven grounds are properly exhausted.

## DISCUSSION

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254(d), this Court cannot grant relief unless the decision of the state court was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" at the time the state court renders its decision or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court

3

proceeding."[3] The Supreme Court has explained that "clearly established Federal law" in § 2254(d)(1) "refers to the holdings, as opposed to the dicta, of [the Supreme Court] as of the time of the relevant state-court decision."[4] The holding must also be intended to be binding upon the states; that is, the decision must be based upon constitutional grounds, not on the supervisory power of the Supreme Court over federal courts.[5] Thus, where holdings of the Supreme Court regarding the issue presented on habeas review are lacking, "it cannot be said that the state court 'unreasonabl[y] appli[ed] clearly established Federal law.'"[6] When a claim falls under the "unreasonable application" prong, a state court's application of Supreme Court precedent must be objectively unreasonable, not just incorrect or erroneous.[7] The Supreme Court has made clear that the objectively unreasonable standard is a substantially higher threshold than simply believing that the state court determination was incorrect.[8] "[A]bsent a specific constitutional violation, federal habeas corpus review of trial error is limited to whether the error 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'"[9] In a federal habeas proceeding, the standard under which this Court must assess the prejudicial

---

[3] 28 U.S.C. § 2254(d); *see Williams v. Taylor*, 529 U.S. 362, 404-06 (2000); *see also Lockyer v. Andrade,* 538 U.S. 63, 70-75 (2003) (explaining this standard).

[4] *Williams*, 529 U.S. at 412.

[5] *Early v. Packer*, 537 U.S. 3, 10 (2002).

[6] *Carey v. Musladin*, 549 U.S. 70, 77 (2006) (alterations by the Court); *see Wright v. Van Patten*, 552 U.S. 120, 127 (2008) (per curiam); *Kessee v. Mendoza-Powers*, 574 F.3d 675, 678-79 (9th Cir. 2009); *Moses v. Payne*, 555 F.3d 742, 753-54 (9th Cir. 2009) (explaining the difference between principles enunciated by the Supreme Court that are directly applicable to the case and principles that must be modified in order to be applied to the case; the former are clearly established precedent for purposes of § 2254(d)(1), the latter are not).

[7] *Wiggins v. Smith*, 539 U.S. 510, 520-21 (2003) (internal quotation marks and citations omitted).

[8] *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007).

[9] *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)).

4

impact of constitutional error in a state-court criminal trial is whether the error had a substantial and injurious effect or influence in determining the outcome.[10] Because state court judgments of conviction and sentence carry a presumption of finality and legality, the petitioner has the burden of showing by a preponderance of the evidence that he or she merits habeas relief.[11]

In applying this standard, this Court reviews the last reasoned decision by the state court.[12] Under AEDPA, the state court's findings of fact are presumed to be correct unless the petitioner rebuts this presumption by clear and convincing evidence.[13] This presumption applies to state trial courts and appellate courts alike.[14]

When there is no reasoned state court decision denying an issue presented to the state court and raised in a federal habeas petition, this Court must assume that the state court decided all the issues presented to it and perform an independent review of the record to ascertain whether the state court decision was objectively unreasonable.[15] The scope of this review is for clear error of the state court ruling on the petition:

> [A]lthough we cannot undertake our review by analyzing the basis for the state court's decision, we can view it through the "objectively reasonable" lens ground by *Williams* . . . . Federal habeas review is not *de novo* when the state court does not supply reasoning for its decision, but an independent review of the record is required to determine whether the state court clearly erred in its application of

---

[10] *Fry v. Pliler*, 551 U.S. 112, 121 (2007) (adopting the standard set forth in *Brecht v. Abrahamson*, 507 U.S. 619, 637-38 (1993)).

[11] *Silva v. Woodford*, 279 F.3d 825, 835 (9th Cir. 2002); *see Wood v. Bartholomew*, 516 U.S. 1, 8 (1995) (per curiam) (stating that a federal court cannot grant "habeas relief on the basis of little more than speculation with slight support").

[12] *Ylst v. Nunnemaker*, 501 U.S. 797, 804 (1991); *Robinson v. Ignacio,* 360 F.3d 1044, 1055 (9th Cir. 2004).

[13] 28 U.S.C. § 2254(e)(1); *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

[14] *Stevenson v. Lewis*, 384 F.3d 1069, 1072 (9th Cir. 2004).

[15] *Reynoso v. Giurbino*, 462 F.3d 1099, 1109 (9th Cir. 2006); *Pham v. Terhune*, 400 F.3d 740, 742 (9th Cir. 2005) (per curiam).

controlling federal law. Only by that examination may we determine whether the state court's decision was objectively reasonable.[16]

"[A]lthough we independently review the record, we still defer to the state court's ultimate decision."[17]

Counsel claims that AEDPA serves as the functional equivalent of suspending habeas corpus. In support of this proposition, counsel cites to *Duncan v. Khanamoku*, 327 U.S. 304 (1946), a case which dealt with the Hawaiian Governor's suspension of habeas corpus and the use of military tribunals to try civilians immediately following the bombing of Pearl Harbor. Counsel's assertion is entirely without merit. AEDPA does not restrict a state prisoner from petitioning the federal government for habeas corpus relief when a federal law has been violated. Furthermore, neither the Supreme Court nor the Ninth Circuit has ever held that AEDPA is unconstitutional.

<u>Structural Defect in the Jury Instructions</u>

Counsel asserts that the jury instructions given in this case were unconstitutional and constituted "error per se" not subject to harmless error review. Counsel asserts that by instructing the jury with California Criminal Jury Instruction No. 1191 ("CALJIC"), which provided the standard by which the jury could find that Schnabel had committed uncharged offenses, had the effect of eroding the "reasonable doubt" instruction.[18]

---

[16] *Delgado v. Lewis* (*Delgado II*), 223 F.3d 976, 982 (9th Cir. 2000) (internal citation omitted); *see also Lewis v. Mayle*, 391 F.3d 989, 996 (9th Cir. 2004).

[17] *Pirtle v. Morgan*, 313 F.3d 1160, 1167 (9th Cir. 2002).

[18] The version of CALJIC No. 1191 given to the jury in this case reads, in pertinent part, as follows:
> You may consider [the uncharged sex offenses] evidence only if the People have proved by a preponderance of the evidence that the defendant in fact committed the uncharged offenses. Proof by a preponderance of the evidence is a different burden of proof from proof beyond a reasonable doubt. A fact is proved by a preponderance of the evidence if you conclude that it is more likely than not that the fact is true. If the People have not met this burden of proof, you must disregard this evidence entirely, that is, the uncharged crimes evidence. If you decide that the defendant committed the uncharged offense or offenses, you may, but are not required to,

Clearly established Supreme Court case law provides that "the Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged."[19]  As a consequence, a jury instruction is constitutionally defective if it "ha[s] the effect of relieving the State of the burden of proof enunciated in *Winship*."[20]  Clearly established Supreme Court case law specifies the standard for reviewing an ambiguous instruction:  "[W]e inquire 'whether there is a reasonable likelihood that the jury has applied the challenged instruction in a way' that violates the Constitution."[21]

Our habeas precedent places an especially heavy burden on a defendant who, like Schnabel, seeks to show constitutional error from a jury instruction that quotes a state statute.  Even if there is some ambiguity, inconsistency, or deficiency in the instruction, such an error does not necessarily constitute a due process violation.  Rather, the defendant must show both that the instruction was ambiguous and that there was a reasonable likelihood that the jury applied the instruction in a way that relieved the State of its burden of proving every element of the crime beyond a reasonable doubt.  In making this determination, the jury instruction may not be judged in artificial isolation, but must be considered in the context of the instructions as a whole and the trial record.  Because it is not enough that there is some slight *possibility* that the

---

conclude from that evidence that the defendant was disposed or inclined to commit sexual offenses, and based on that decision, also conclude that the defendant was likely to commit the sex offenses as charged here.  If you conclude that the defendant committed the uncharged offense or offenses, that conclusion is only one factor to consider along with all the other evidence.  It is not sufficient by itself to prove that the defendant is guilty of the charged sexual offenses.  The People must still prove each element of every charge beyond a reasonable doubt.

[19] *In re Winship,* 397 U.S. 358, 364 (1970).

[20] *Sandstrom v. Montana,* 442 U.S. 510, 521 (1979).

[21] *Estelle v. McGuire,* 502 U.S. 62, 72 (1991) (citation omitted).

7

jury misapplied the instruction, the pertinent question is whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process.[22]

Schnabel has not met his burden. CALJIC 1191, as given, was not ambiguous. The instruction explicitly stated that the prior uncharged offenses "is not sufficient by itself to prove that the defendant is guilty of the offenses charged here," and the State was still required to "prove each element of the crime beyond a reasonable doubt." This language made clear to the jury that the preponderance standard of proof applied only to the prior offenses, and the current crimes must be proven beyond a reasonable doubt. Furthermore, the jury was instructed that in rendering a finding of guilt beyond a reasonable doubt, all evidence must be considered (CALCRIM No. 220). The jury is presumed to have followed these instructions.[23] Accordingly, under these circumstances, the state courts' determination of this issue was not contrary to, or an unreasonable application of, clearly established Supreme Court precedent.

Insufficient Evidence Schnabel Caused Injury to Sabrina

Counsel claims that there was no medical evidence presented to show that Schnabel caused emotional harm to Sabrina. Counsel asserts that aggravating circumstances are the equivalent of elements of the crime and must be proved beyond a reasonable doubt.

The California Court of Appeal rejected this argument on direct appeal, noting the testimony at trial. Sabrina herself testified that Schnabel's actions made her "scared" and "helpless." She also testified that she was afraid her family would be hurt if she did not comply with Schnabel's demands. Finally, Sabrina stated that she was afraid that if her parents found out they would not like her or think she was a bad kid. Sabrina's mother also testified that after Sabrina met Schnabel, she demonstrated severe emotional problems and had to be sent to a behavior modification facility in Utah.

---

[22] *Waddington v. Sarausad*, 555 U.S. ___, 129 S. Ct. 823, 831-32 (2009) (internal quotation marks and citations omitted).

[23] *Weeks v. Angelone,* 528 U.S. 225, 234 (2000).

As stated by the Supreme Court in *Jackson*, the constitutional standard for sufficiency of the evidence is whether, "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."[24] This Court must, therefore, determine whether the California court unreasonably applied *Jackson*. In making this determination, this court may not usurp the role of the finder of fact by considering how it would have resolved any conflicts in the evidence, made the inferences, or considered the evidence at trial.[25]

Schnabel misperceives the role of a federal court in a habeas proceeding challenging a state-court conviction. This Court is precluded from either re-weighing the evidence or assessing the credibility of witnesses. Where, as in this case, the question is one of credibility, the finding of the jury carries the day.[26] Under *Jackson*, the role of this Court is to simply determine whether there is any evidence, if accepted as credible by the jury, sufficient to sustain conviction.[27] That such evidence exists is clearly established by the record in this case. Petitioner bears the burden of establishing by clear and convincing evidence that the factual findings of the jury were erroneous;[28] a burden Schnabel has failed to carry.

States possess primary authority for defining and enforcing the criminal law.[29] Consequently, although the sufficiency of the evidence review by this Court is grounded in the Fourteenth Amendment, it must undertake its inquiry by reference to the elements of the crime

---

[24] *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in the original); *see McDonnell v. Brown*, 558 U.S. ___, 130 S. Ct. 665, 673 (2010) (reaffirming this standard).

[25] *Jackson*, 443 U.S. at 318-19.

[26] *See Bruce v Terhune*, 376 F.3d 950, 957 (9th Cir. 2004).

[27] *See Schlup v. Delo*, 513 U.S. 298, 340 (1995).

[28] 28 U.S.C. § 2254(e)(1).

[29] *See Engle v. Isaac*, 456 U.S. 107, 128 (1982).

as set forth in state law.[30]  This Court must also be ever mindful of the deference owed to the trier of fact and the sharply limited nature of constitutional sufficiency review.[31]  A fundamental principle of our federal system is "that a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus."[32]  A determination of state law by a state intermediate appellate court is also binding in a federal habeas action.[33]  This is especially true where the highest court in the state has denied review of the lower court's decision.[34]  Schnabel is not entitled to relief on this claim.

<u>Court Improperly Admitted Evidence of Schnabel's Prior Conviction</u>

Counsel asserts that the trial court erred by admitting evidence of a prior sexual offense, and California Evidence Code section 1108, which allows the admission of such evidence, violates the Sixth Amendment.

To the extent that Schnabel challenges the trial court's discretionary decision to admit evidence of a prior sexual offense, his argument is foreclosed.  "Federal courts hold no supervisory authority over state judicial proceedings and may intervene only to correct wrongs

---

[30] *Jackson*, 443 U.S. at 324 n. 16.

[31] *Juan H. v. Allen*, 406 F.3d 1262, 1275 (9th Cir. 2005).

[32] *Bradshaw v. Richey,* 546 U.S. 74, 76 (2005); *see West v. AT&T,* 311 U.S. 223, 236 (1940) ("[T]he highest court of the state is the final arbiter of what is state law.  When it has spoken, its pronouncement is to be accepted by federal courts as defining state law . . . .").

[33] *See Hicks v. Feiock,* 485 U.S. 624 629-30 & n.3 (1988) (noting state appellate court's determination of state law is binding and must be given deference).

[34] *Id.*; *see West,* 311 U.S. at 237 ("This is the more so where, as in this case, the highest court has refused to review the lower court's decision rendered in one phase of the very litigation which is now prosecuted by the same parties before the federal court."); *Shannon v. Newland*, 410 F.3d 1083, 1087 (9th Cir. 2005) (same).

of constitutional dimension."[35] Thus, this Court may only grant relief if California Evidence Code section 1108 violates the Constitution.

As noted above, habeas relief is available only when the state court's adjudication of a claim resulted in a decision that was contrary to, or an unreasonable application of, clearly established federal law as determined by the Supreme Court.[36] California Evidence Code section 1108 does not violate clearly established law because the Supreme Court has explicitly declined to decide whether a state law permitting the use of "prior crimes" evidence to show propensity would violate federal due process.[37] Where the Supreme Court has explicitly declined to rule on a constitutional issue, the law cannot be "clearly established" under AEDPA, and this Court cannot grant habeas relief.[38]

<u>The Sentencing Scheme under Which Schnabel Was Sentenced Is Unconstitutional</u>

Counsel asserts the sentencing scheme under which he was sentenced, as applied, was unconstitutional because there was no evidence that Schnabel caused emotional injury to Sabrina and the court abused its discretion by not striking Schnabel's prior conviction, both of which resulted in a sentence which amounts to cruel and unusual punishment in violation of the Eighth Amendment. To the extent that counsel reasserts arguments raised in the second and fifth grounds, the merits of those arguments are addressed in separate discussions. With respect to

---

[35] *Sanchez-Llamas v. Oregon*, 548 U.S. 331, 345 (2006) (quoting *Smith v. Philips*, 455 U.S. 209, 221 (1982)).

[36] *See* 28 U.S.C. § 2254(d).

[37] *Estelle*, 502 U.S. at 75 n. 5; *see Garceau v. Woodford*, 275 F.3d 769, 774 (9th Cir. 2001), *rev'd on other grounds by Woodford v. Garceau*, 538 U.S. 202 (2003).

[38] *Alberni v. McDonnell*, 458 F.3d 860, 866-67 (9th Cir. 2006); see *Larson v. Palmateer*, 515 F.3d 1057, 1066 (9th Cir. 2008) ("[b]ecause the [Supreme] Court has expressly left this issue an open question, the state court did not unreasonably apply clearly established federal law in determining that the admission of evidence of Larson's criminal history did not violate due process.").

11

this ground, this Court will only determine whether the length of Schnabel's sentence amounted to cruel and unusual punishment.

The trial court sentenced Schnabel to 375 years in prison, and the California Court of Appeal affirmed this sentence on direct appeal. The Court of Appeal noted that "[a]lthough [Schnabel's] sentence is severe, his conduct in repeatedly molesting young girls over a long period of time was reprehensible. His case is not an 'exquisite rarity' where the sentence is so harsh as to 'shock the conscience' or to 'offend fundamental notions of human dignity.'"[39]

Schnabel claims that the duration of his sentence is so disproportional to his crime that it constitutes a "cruel and unusual punishment." Schnabel's argument is unpersuasive. The Supreme Court has noted that, outside of capital cases, "successful challenges to the proportionality of particular sentences have been exceedingly rare."[40] In *Rummel v. Estelle*,[41] the Supreme Court held that a mandatory life sentence imposed under Texas recidivist statute following defendant's third felony conviction for obtaining $120.75 by false pretenses did not constitute cruel and unusual punishment. Rummel had been previously convicted in Texas state courts and sentenced to prison for felonies of fraudulent use of credit card to obtain $80 worth of goods or services and passing a forged check in the amount of $28.36. Thus, *Rummel* has come to "stand[] for the proposition that federal courts should be reluctant to review legislatively mandated terms of imprisonment, and that successful challenges to the proportionality of particular sentences should be exceedingly rare."[42]

Given Schnabel's long history of molesting young girls, this Court cannot say the Court of Appeal's decision upholding the duration of Schnabel's sentence and the sentencing scheme

---

[39] Docket No. 2-1, p. 20.

[40] *Ewing v. California*, 538 U.S. 11, 21 (2003).

[41] 445 U.S. 263 (1980).

[42] *Hutto v. Davis*, 454 U.S. 370, 373-74 (1982).

12

was contrary to clearly established Federal law, or was based on an unreasonable determination of the facts. Schnabel is not entitled to relief on this ground.

### Trial Court Failed by Declining to Strike Schnabel's Prior Conviction for Purposes of Sentencing

During sentencing, Counsel filed a *Romero* motion,[43] requesting that the court strike one of his previous convictions for the purposes of sentencing. The judge denied the motion, and the Court of Appeal upheld the denial. Schnabel has reasserted this claim in his petition to this Court.

To the extent that Schnabel raises issues of the proper application of state law, they are beyond the purview of this Court in a federal habeas proceeding. It is a fundamental precept of dual federalism that the states possess primary authority for defining and enforcing the criminal law.[44] "[A] state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus."[45] This principle applied to federal habeas review of state convictions long before AEDPA.[46] A federal court errs if it interprets a state legal doctrine in a manner that directly conflicts with the state supreme

---

[43] A shorthand reference to *People v. Superior Court (Romero)*, 917 P.2d 628 (Cal. 1996). In *Romero*, the California Supreme Court held a trial judge has the discretion to strike a prior felony conviction, within the meaning of California's "Three Strikes Law" for the purposes of sentencing.

[44] *See Estelle*, 502 U.S. at 67-68 (a federal habeas court cannot reexamine a state court's interpretation and application of state law); *Walton v. Arizona,* 497 U.S. 639, 653 (1990) (it is presumed that the state court knew and correctly applied state law), *overruled on other grounds by Ring v. Arizona*, 536 U.S. 584 (2002); *see also Engle*, 456 U.S. at 119 (challenging the correctness of the application of state law does not allege a deprivation of federal rights sufficient for habeas relief); *Bell v. Cone,* 543 U.S. 447, 455 (2005) (a federal court may not lightly presume that a state court failed to apply its own law).

[45] *Bradshaw,* 546 U.S. at 76; *see West,* 311 U.S. at 236 ("[T]he highest court of the state is the final arbiter of what is state law. When it has spoken, its pronouncement is to be accepted by federal courts as defining state law. . . .").

[46] *See Mullaney,* 421 U.S. at 691 ("state courts are the ultimate expositors of state law").

court's interpretation of the law.[47]  It does not matter that the state supreme court's statement of the law was dictum if it is perfectly clear and unambiguous.[48]

A determination of state law by a state intermediate appellate court is also binding in a federal habeas action.  This is especially true where the highest court in the state has denied review of the lower court's decision.  "Federal courts hold no supervisory authority over state judicial proceedings and may intervene only to correct wrongs of constitutional dimension."[49]  Schnabel has not stated a claim that is cognizable by this Court, subsequently, he is not entitled to relief under this ground.

### Court Abused its Discretion During Sentencing

Counsel asserts that the trial court abused its discretion during sentencing by not striking some, if not all of the enhancements, because there was no record that Schnabel was beyond redemption.  This Court notes that counsel raises several other issues in this ground, to wit: the trial court should have struck Schnabel's prior conviction for purposes of sentencing, and the California Sentencing scheme is unconstitutional.  Both of these arguments are addressed in other grounds.

The trial court decided to make the sentences on each count run consecutive to one another instead of allowing them to run concurrently.  The California Court of Appeal affirmed the trial court's sentence, and this Court is bound by that decision.  "Federal courts hold no supervisory authority over state judicial proceedings and may intervene only to correct wrongs of constitutional dimension."[50]  Schnabel is not entitled to relief on this ground.

---

[47] *See Bradshaw*, 546 U.S. at 76-78 ("Because the Sixth Circuit disregarded the Ohio Supreme Court's authoritative interpretation of Ohio law, its ruling on sufficiency of the evidence was erroneous.").

[48] *Id.* at 76.

[49] *Sanchez-Llamas v. Oregon*, 548 U.S. 331, 345 (2006) (quoting *Smith v. Philips*, 455 U.S. 209, 221 (1982)); *see Wainwright v. Goode*, 464 U.S. 78, 86 (1983) (per curiam).

[50] *Sanchez-Llamas*, 548 U.S. at 345 (quoting *Smith v. Philips*, 455 U.S. 209, 221 (1982)); *see Wainwright*, 464 U.S. at 86.

Schnabel's Trial Counsel Was Ineffective

Counsel asserts that Schnabel's trial counsel was ineffective for several different reasons. Specifically: trial counsel did not call all available witnesses; trial counsel's failure to explore Brito's role and character; trial counsel's waiver regarding custody status; trial counsel waived Schnabel's right to present a psychological impairment defense; trial counsel was not prepared; and trial counsel contributed to grounds one through three. Many of these issues were raised on direct appeal. The California Court of Appeal held them to be without merit.

Under *Strickland*, to demonstrate ineffective assistance of counsel, Petitioner must show both that his counsel's performance was deficient and that the deficient performance prejudiced his defense.[51] A deficient performance is one in which counsel made errors so serious that counsel was not functioning as the counsel guaranteed by the Sixth Amendment.[52] Petitioner must show that defense counsel's representation was not within the range of competence demanded of attorneys in criminal cases, and that there is a reasonable probability that, but for counsel's ineffectiveness, the result would have been different.[53] An analysis that focuses "solely on mere outcome determination, without attention to whether the result of the proceeding was fundamentally unfair or unreliable, is defective."[54]

---

[51] *Strickland v. Washington*, 466 U.S. 668, 687 (1984).

[52] *Id*.

[53] *Hill v. Lockhart,* 474 U.S. 52, 57 (1985).

[54] *Lockhart v. Fretwell*, 506 U.S. 364, 369 (1993); *see Strickland*, 466 U.S. at 687; *see also Kimmel v. Morrison*, 477 U.S. 365, 374 (1986) ("The essence of an ineffective-assistance claim is that counsel's unprofessional errors so upset the adversarial balance between defense and prosecution that the trial was rendered unfair and the verdict rendered suspect"); *United States v. Cronic*, 466 U.S. 648, 258 (1984) ("the right to the effective assistance of counsel is recognized not for its own sake, but because of the effect it has on the ability of the accused to receive a fair trial. Absent some effect of challenged conduct on the reliability of the trial process, the Sixth Amendment guarantee is generally not implicated.").

15

*Strickland* and its progeny do not mandate that this Court act as a "Monday morning quarterback" in reviewing tactical decisions.[55] Indeed, the Supreme Court admonished in *Strickland*:

> Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy. There are countless ways to provide effective assistance in any given case. Even the best criminal defense attorneys would not defend a particular client in the same way.[56]

In reviewing ineffective assistance of counsel claims in a federal habeas proceeding:

> The question "is not whether a federal court believes the state court's determination" under the *Strickland* standard "was incorrect but whether that determination was unreasonable—a substantially higher threshold." *Schriro, supra,* at 473, 127 S.Ct. 1933. And, because the *Strickland* standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard. See *Yarborough v. Alvarado,* 541 U.S. 652, 664, 124 S.Ct. 2140, 158 L.Ed.2d 938 (2004) ("[E]valuating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations.").[57]

It is through this doubly deferential lens that a federal habeas court reviews *Strickland* claims under the § 2254(d)(1) standard.[58]

Counsel first asserts that trial counsel was ineffective for failing to call all available witnesses. The California Court of Appeal determined that this decision to not call several character witnesses was a sound, tactical decision based on trial counsel's desire not to offer

---

[55] *See Harris v. Reed*, 894 F.2d 871, 877 (7th Cir. 1990).

[56] 466 U.S. at 689 (internal citations and quotation marks omitted).

[57] *Knowles v. Mirzayance*, 556 U.S. ___, 129 S. Ct. 1411, 1420 (2009).

[58] *See id.* (citing *Yarborough v. Gentry*, 540 U.S. 1, 5-6 (2003)).

16

conflicting testimony or have Schnabel's prior conviction repeatedly brought up to rebut the positive character testimony. Schnabel has failed to show that this determination was "unreasonable" within the context of *Strickland*, nor has he provided evidence beyond mere conclusory statements as to what the witnesses would have testified to.

Counsel next asserts that trial counsel was ineffective for failing to explore Brito's role and character. Brito was one of the victim's mother and had expressed a desire to see Schnabel serve time in prison. Apparently, Brito also provided counseling to Schnabel at the time of the alleged molestations. According to Schnabel, at one point Brito claimed to have a Ph.D. in Psychology and that her trainer, Dr. Samaan, terminated her licensing training for unprofessional conduct amounting to fraud. Because Brito was an employee of Dr. Samaan, this raised a concern that Brito had possibly influenced her daughter, T.B., to make up the allegations against Schnabel. The California Court of Appeal held that counsel's decision not to pursue this theory was a sound, tactical decision. The court noted that T.B. denied that anyone had "put these ideas into her head" and that there was nothing more, beyond pure speculation, which would allow one to conclude that Brito had influenced her daughter.[59] Schnabel has failed to show that this determination was "unreasonable" within the context of *Strickland*, nor has he provided evidence, beyond mere conclusory statements, that Brito persuaded her daughter to make up the allegations against Schnabel.

In a supplemental filing, counsel asserts that he needs to conduct a deposition of Dr. Samaan in order to determine whether and to what extent Brito engaged in unprofessional conduct and to what extent this conduct is connected to Schnabel's case. The record indicates that trial counsel's investigator attempted to ask Dr. Samaan about the circumstances surrounding Brito's termination. Dr. Samaan indicated that the Privacy Act and his professional relationship barred him from discussing this matter unless he was called to testify. At that point, trial counsel reviewed the investigator's report and made the tactical decision not to pursue the investigation into Brito's termination. Current counsel has not provided this Court with any

---

[59] Docket No. 2-1, p. 15.

17

reason to believe that Dr. Samaan is now willing to discuss Brito's termination in the context of a deposition.  Furthermore, counsel's request is supported by nothing more than pure speculation; it is clear that even he is unsure what, if any, fraudulent behavior Brito committed and what connection it may have to this case.  Counsels's request for leave to depose Dr. Samaan will be denied.  Accordingly, in addition to not overcoming the presumption that trial counsel's performance was proper, counsel has failed to show prejudice under *Strickland*.[60]

Counsel also direct's this Court's attention to the Supreme Court's recent decision in *Sears v. Upton*, 561 U.S. __ (2010).  In *Sears*, the Supreme Court held that trial counsel's investigation of mitigating factors in a death-penalty case was inadequate when a proper investigation would have turned up evidence of defendant's traumatic childhood and history of mental illness and drug and alcohol addiction.  Because the prosecutor, in arguing for the death penalty, emphasized that the defendant had a relatively privileged life, defendant was able to show prejudice.  This case is inapposite to Schnabel's alleged ineffective assistance of counsel claim.  In this habeas petition, counsel simply provides a conclusory statement that there may or may not be some evidence that one of the witnesses was manipulated into lying and that trial counsel was ineffective for failing to investigate this theory.  Schnabel has the burden of showing by a preponderance of the evidence that he or she merits habeas relief, a burden which he has failed to meet.[61]

Counsel asserts that trial counsel was ineffective for allowing into evidence the fact that he had been in custody for the charged crimes.  Trial counsel explained that she did not object to the submission of the fact that defendant was in custody because it was likely the jury assumed that Schnabel was in custody, and she did not want the jury to perceive that she was holding

---

[60] Counsel fails to account for the other two young girls who testified that Schnabel molested them.  Presumably, Brito would only have the opportunity to manipulate her own daughter.  To the extent that counsel alleges that Brito orchestrated a conspiracy among the three girls (presumably with their parents' knowledge or consent) he has provided no support for this theory.

[61] *Silva*, 279 F.3d at 835; *see Wood*, 516 U.S. at 8 (per curiam) (stating that a federal court cannot grant "habeas relief on the basis of little more than speculation with slight support").

things back from them.[62]  The Court of Appeal found this explanation to be "manifestly reasonable" and held that this concession did not constitute ineffective assistance of counsel because trial counsel did not have an obligation to secure Schnabel's permission before making this concession.  Schnabel has failed to show that this determination was "unreasonable" within the context of *Strickland*, nor has he provided evidence as to how this concession prejudiced his defense.  He is not entitled to relief on this ground.

Counsel next asserts that trial counsel was ineffective for not pursuing a psychological impairment defense.  According to Schnabel, there was evidence that he had become more forgetful after he had been in a car accident.  This evidence, Schnabel now claims, could have helped the jury to better understand Schnabel's testimony in light of his forgetfulness.

Schnabel's argument is without merit because he has failed to show that the result would have been different had trial counsel elicited the fact that Schnabel was forgetful since the accident.[63]  The evidence against Schnabel was significant as he had prior acts of molestation and the prosecution presented testimony from multiple victims.  Schnabel has not demonstrated how presenting evidence of his forgetfulness would have undermined this evidence.  He is not entitled to relief under this ground.

Counsel claims that trial counsel was ineffective because she was unprepared, to wit, she did not turn in her witness list on time.  The California Court of Appeal held that Schnabel's claim was without merit because he failed to show any possibility of a different outcome had trial counsel tendered her list sooner.[64]  Aside from making the conclusory statement that this issue is demonstrative of other failures on behalf of trial counsel, Counsel has not demonstrated

---

[62] Docket No. 2-1, p. 16.

[63] *Hill,* 474 U.S. at 57.

[64] Docket No. 2-1, p. 17.

19

how the outcome of Schnabel's case would have differed had trial counsel turned in the witness list sooner.[65] Schnabel is not entitled to relief under this ground.

Lastly, Counsel asserts that trial counsel was ineffective for failing to object to the rulings and proceedings that gave rise to grounds one through three. Since grounds one through three are completely meritless, Schnabel cannot show prejudice.[66] Schnabel is not entitled to relief under this ground.

## CONCLUSION AND ORDER

Schnabel is not entitled to relief under any ground raised in the Petition. Accordingly,

**IT IS HEREBY ORDERED THAT** the Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus is **DENIED**.

**IT IS FURTHER ORDERED THAT** counsel's request at Docket No. 29 for leave to depose Dr. Samaan is hereby **DENIED**.

**IT IS FURTHER ORDERED THAT** the Court declines to issue a Certificate of Appealability. Any further request for a Certificate of Appealability must be addressed to the Court of Appeals.[67]

The Clerk of the Court to enter judgment accordingly.

Dated: September 22, 2010

/s/ James K. Singleton, Jr.
**JAMES K. SINGLETON, JR.**
United States District Judge

---

[65] *Hill*, 474 U.S. at 57.

[66] *Id.*

[67] *See* Fed. R. App. P. 22(b); Ninth Circuit R. 22-1.